1
2
3
4
5
6
7
8        UNITED STATES DISTRICT COURT
9        SOUTHERN DISTRICT OF CALIFORNIA
10

| | |
|---|---|
| THERESA SMITH, an individual, <br><br> Plaintiff, <br><br> v. <br><br> CREDIT CORP SOLUTIONS, INC., <br><br> Defendant. | Case No.: 3:20-cv-01295-JAH-RBB <br><br> **(1) DENYING DEFENDANT'S REQUEST FOR JUDICIAL NOTICE (ECF No. 20-2);** <br><br> **(2) GRANTING PLAINTIFF'S REQUEST FOR JUDICIAL NOTICE (ECF No. 26);** <br><br> **(3) GRANTING IN PART DEFENDANT'S MOTION TO DISMISS (ECF No. 20-1), and;** <br><br> **(4) DENYING PLAINTIFF'S MOTION FOR SANCTIONS (ECF No. 15).** |

Pending before the Court is Defendant Credit Corp Solutions Inc.'s ("Defendant" or "Credit Corp") Motion to Dismiss Plaintiff's First Amended Complaint ("FAC"). (ECF No. 20, "MTD"). Plaintiff Theresa Smith ("Plaintiff") filed a response in opposition to the motion, (ECF No. 25, "Opp'n."), and Defendant filed a reply in support of the motion,

(ECF No. 29, "Reply").  Also before the Court is Plaintiff's Motion for Sanctions.[1]  (ECF No. 15, "Sanctions Mot.").  The motion is fully briefed.  (ECF Nos. 21, 23).  The motions are decided on the briefs without oral argument pursuant to Civil Local Rule 7.1.d.1.  For the reasons set forth, Defendant's motion to dismiss is **granted in part and denied in part**, and Plaintiff's motion for sanctions is **denied**.

# I.

# BACKGROUND

Plaintiff Theresa Smith brought this action against Defendant Credit Corp, alleging violations of the Fair Debt Collection Practices Act ("FDCPA"), pursuant to 15 U.S.C. § 1692, *et. seq.*, the Rosenthal Fair Debt Collection Practices Act, pursuant to California Civil Code § 1788 *et. seq.*, and the California common law tort of intrusion upon seclusion. (*See* ECF No. 10-1, "FAC").  According to the Complaint, Plaintiff incurred a financial obligation to Synchrony Bank for a revolving line of credit in the form of a CareCredit consumer credit card.  FAC at ¶ 15.[2]  Plaintiff used the card for personal, family, or household purposes.  FAC at ¶ 16.  Plaintiff defaulted on her debt. FAC at ¶ 17.  Thereafter, the debt was assigned or transferred to Credit Corp Solutions, Inc., a Delaware corporation and a debt buyer who collects debts owed.  FAC at ¶¶ 10, 18.

In a letter dated August 1, 2018, Plaintiff was informed that the debt with Synchrony Bank had been assigned to Defendant.  FAC at ¶¶ 19-20.  On August 14, 2018, Plaintiff sent a debt verification letter and simultaneously informed Defendant she "refuse[d] to pay" her debt.  FAC at ¶¶ 22-23.  Defendant acknowledged receipt of Plaintiff's letter

---

[1] The motion is captioned as a Motion to Seal a Previously filed Document 6-2 and 14 and for Sanctions for Violations of Fed. R. Civ. P. 5.2.  The Court granted Plaintiff's motion in part, and ordered for ECF No. 6-2 to be sealed, and ECF No. 14 to be stricken from the record.  (ECF No. 18).  The Court set out a briefing schedule on the remaining motion for sanctions.  *Id.*  Accordingly, only the remaining issue of whether sanctions are appropriate against Defendant will be addressed.

[2] The following is a recitation of pleaded facts and is not to be construed as factual findings.

1 shortly thereafter.  FAC at ¶ 24.  Plaintiff alleges that despite her previous communication,
2 Defendant mailed Plaintiff a collection letter dated July 10, 2019.  FAC at ¶ 27.  Defendant
3 also attempted to communicate with Plaintiff numerous times by telephone.  FAC at ¶ 43.
4 In an attempt to collect the debt, Defendant called Plaintiff's home telephone on September
5 5, 2018; September 13, 2018; September 25, 2018; October 11, 2018; and October 12,
6 2018.  FAC at ¶ 44.  Defendant and its employee John Perdemo called Plaintiff on October
7 16, 2018, during which time Plaintiff requested Defendant to cease contact.  FAC at ¶¶ 45-
8 48.  Defendant called Plaintiff again on October 17, 2018, in an attempt to collect the
9 outstanding debt.  FAC at ¶ 49.  Plaintiff alleges she received at least twenty-four telephone
10 calls from Defendant between September 5, 2018, and June 10, 2019, after her written
11 communication to Defendant that she refused to pay her outstanding debt.  FAC at ¶ 49.

12      Plaintiff brings three causes of action: (1) violation of the FDPCA; (2) violation of
13 the Rosenthal Act; and (3) intrusion upon seclusion.

## II.

## DISCUSSION

### A.    Requests for Judicial Notice

"Generally, district courts may not consider material outside the pleadings when
assessing the sufficiency of a complaint under Rule 12(b)(6) of the Federal Rules of Civil
Procedure."  *Lee v. City of Los Angeles*, 250 F.3d 668, 688 (9th Cir. 2001).  There are two
exceptions to this rule: the incorporation-by-reference doctrine, and judicial notice under
Federal Rules of Evidence 201.  *Id.*  Under Rule 201, a court may take notice of an
adjudicative fact if it is "not subject to reasonable dispute."  Fed. R. Evid. 201(b).  A fact
is "not subject to reasonable dispute" if it is "generally known," or "can be accurately and
readily determined from sources whose accuracy cannot reasonably be questioned."  *Id.*  A
document may be incorporated by reference "if the plaintiff refers extensively to the
document or the document forms the basis of the plaintiff's claim[,]" however, "the mere
mention of the existence of a document is insufficient to incorporate the contents of a

document." *Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 1002 (9th Cir. 2018).[3] A document may still form the basis of a complaint if "the claim necessarily depended on th[e document.]" *Id.* (*citing Knievel v. ESPN*, 393 F.3d 1068, 1076 (9th Cir. 2005)). "However, if the document merely creates a defense to the well-pled allegations in the complaint, then that document did not necessarily form the basis of the complaint." *Id.* Further, "it is improper to assume the truth of an incorporated document if such assumptions only serve to dispute facts stated in a well-pleaded complaint." *Khoja*, 899 F.3d at 1003.

### 1. Defendant's Request for Judicial Notice

Concurrent with the motion to dismiss, Defendant requests the Court take judicial notice of numerous documents. Exhibit 1 is a Bill of Sale and Affidavit of Sale of Account; Exhibits 2-6 are various items of correspondence between Plaintiff and Defendant. (ECF No. 20-2, "Defs. RJN"). Defendant contends all documents are appropriate subjects for consideration under the doctrine of incorporation by reference. Plaintiff opposes this request, arguing that Defendant's reliance on contested non-public documents is improper because the documents are disputed material facts. (Opp'n at 19-20).

At this stage of the pleading, the Court finds that the exhibits are not proper subjects for judicial notice. As to Exhibit 1, the Bill of Sale and Affidavit of Sale of Account, Plaintiff's claim does not depend on the contents of the document. *See Knievel v. ESPN*, 393 F.3d 1068, 1076 (9th Cir. 2005) ("We have extended the 'incorporation by reference' doctrine to situations in which the plaintiff's claim depends on the contents of a document, the defendant attaches the document to its motion to dismiss, and the parties do not dispute the authenticity of the document, even though the plaintiff does not explicitly allege the contents of that document in the complaint."). As to Exhibits 3-6, the various items of correspondence between Plaintiff and Defendant are also not appropriate for judicial

---

[3] Unless otherwise noted, internal quotation marks, ellipses, brackets, citations, and footnotes are omitted from citations.

notice, as Plaintiff's claim does not depend on the contents of the documents. *See id.* Finally, Exhibit 2 is allegedly a letter addressed to Defendant written by Plaintiff. Although the letter may be appropriate for judicial notice under the doctrine of incorporation by reference, Plaintiff disputes the authenticity of this document and all others for which Defendant is seeking judicial notice. (Opp'n. at 18-22). Accordingly, the Court finds the Court's review of such documents would be more appropriate in connection with a motion for summary judgment. Charles Alan Wright & Arthur R. Miller, 5C Federal Practice and Procedure § 1366 (3d ed. 2021) ("As the language of [Rule 12(b)(6)] suggests, federal courts have complete discretion to determine whether or not to accept the submission of any material beyond the pleadings that is offered in conjunction with a Rule 12(b)(6) motion and rely on it, thereby converting the motion, or to reject it or simply not consider it.").

### 2.    Plaintiff's Request for Judicial Notice

Plaintiff requests the Court take judicial notice of a (1) Nationwide Multistate Licensing System database search, which identifies Credit Corp as a licensed collection agency in Arizona, Connecticut, Idaho, Maryland, Massachusetts, New Mexico, North Dakota, Oregon, Rhode Island, and Wyoming; (2) Minnesota Commerce Department database search that identifies Credit Corp as a licensed collection agency; (3) Washington State Department of Revenue database search that identifies Credit Corp as an out-of-state collection agency; and (4) Alaska Department of Commerce, Community, and Economic Development database search that identifies Credit Corp as a licensed collection agency. (ECF No. 26, "Pls. RJN").[4]  Defendant did not file an opposition to Plaintiff's request. The Court takes judicial notice of the above exhibits pursuant to Federal Rule of Evidence 201.

---

[4] Some states require a debt collector to obtain a license before they can collect a debt in a state, while others do not. On January 1, 2022, the Debt Collection Licensing Act took effect, requiring debt collectors and buyers to apply for a license with the state of California. *See* Dep't of Fin. Protection & Innovation, *Laws Impacting Debt Collectors*, https://dfpi.ca.gov/debt-collection-licensee/ (last updated March 4, 2022).

*See Chenault v. Cobb*, Case No. 13-CV-03828-MEJ, 2014 WL 4607484 at *2 (N.D. Cal. Sept. 15, 2014) (taking judicial notice of NMLS online records because it is a "matter[ ] of public record, provided by a government agency for public review").

**B.  Defendant's Motion to Dismiss**

Defendant seeks dismissal pursuant to Federal Rules of Civil Procedure 12(b)(6). Rule 12(b)(6) tests the sufficiency of the complaint. *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001).  Dismissal is warranted under Rule 12(b)(6) where the complaint lacks a cognizable legal theory. *Robertson v. Dean Witter Reynolds, Inc.*, 749 F.2d 530, 534 (9th Cir. 1984); *see Neitzke v. Williams*, 490 U.S. 319, 326 (1989) ("Rule 12(b)(6) authorizes a court to dismiss a claim on the basis of a dispositive issue of law.").  Alternatively, a complaint may be dismissed where it presents a cognizable legal theory yet fails to plead essential facts under that theory. *Robertson*, 749 F.2d at 534.  While a plaintiff need not give "detailed factual allegations," he must plead sufficient facts that, if true, "raise a right to relief above the speculative level." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 545 (2007).

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.' " *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  A claim is facially plausible when the factual allegations permit "the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*  In other words, "the non-conclusory 'factual content,' and reasonable inferences from that content, must be plausibly suggestive of a claim entitling the plaintiff to relief." *Moss v. U.S. Secret Service*, 572 F.3d 962, 969 (9th Cir. 2009).  "Determining whether a complaint states a plausible claim for relief will... be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679.

In reviewing a motion to dismiss under Rule 12(b)(6), the court must assume the truth of all factual allegations and must construe all inferences from them in the light most favorable to the nonmoving party. *Thompson v. Davis*, 295 F.3d 890, 895 (9th Cir. 2002);

*Cahill v. Liberty Mut. Ins. Co.*, 80 F.3d 336, 337-38 (9th Cir. 1996).   However, legal conclusions need not be taken as true merely because they are cast in the form of factual allegations.  *Ileto v. Glock, Inc.*, 349 F.3d 1191, 1200 (9th Cir. 2003); *W. Min. Council v. Watt*, 643 F.2d 618, 624 (9th Cir. 1981).   When ruling on a motion to dismiss, the Court may consider the facts alleged in the complaint, documents attached to the complaint, documents relied upon but not attached to the complaint when authenticity is not contested, and matters of which the Court takes judicial notice.  *Lee v. City of Los Angeles*, 250 F.3d 668, 688-89 (9th Cir. 2001).   If a court determines that a complaint fails to state a claim, the court should grant leave to amend unless it determines that the pleading could not possibly be cured by the allegation of other facts.  *See Doe v. United States*, 58 F.3d 494, 497 (9th Cir. 1995).

## 1.    First Claim: Violation of the FDCPA

The FDCPA was created to protect consumers from "abusive, deceptive, and unfair" debt collection practices. *See* 15 U.S.C. § 1692(a).  There are three requirements for an FDCPA claim: (1) the plaintiff must be a "consumer"; (2) the defendant must be a "debt collector"; and (3) the defendant must have committed some act or omission in violation of the FDCPA. *See Robinson v. Managed Accounts Receivables Corp.*, 654 F.Supp.2d 1051, 1057 (C.D. Cal. 2009).   Defendant challenges the sufficiency of Plaintiff's allegations as to the second and third requirements.

### a. Whether Credit Corp is a "Debt Collector" For Purposes of the FDCPA

As a threshold matter, Defendant asserts that Plaintiff only provides threadbare recitals of Credit Corp's status as a debt collector.  (MTD at 11-12).  The FDCPA defines "debt collector," in pertinent part, as:

> [A]ny person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another.

15 U.S.C. § 1692a(6).[5]

Credit Corp asserts that Plaintiff's allegations are "bare statements" and Plaintiff "does not allege that [Defendant's] principal business is the collection of debts owed to others or that it regularly collects or attempts to collect debts owed to others." (MTD at 12). Defendant's assertion that Plaintiff only provides conclusory statements regarding Defendant's status as a debt collector is unpersuasive, particularly in light of Defendant's status as a licensed collection agency in numerous states. *See infra,* II.A.2. The FAC alleges that Credit Corp is "a collection agency which regularly collects consumer debts," "engages in debt collection," and "are debt collectors" as defined by 15 U.S.C. § 1692a(6). FAC at 2-3. As such, Plaintiff clearly alleges that Defendant is a "debt collector" as required. Additionally, in deciding a Rule 12(b)(6) motion to dismiss, a court must accept Plaintiff's factual allegations as true and construe them in favor of the nonmoving party. *Thompson,* 295 F.3d at 895.

Next, Defendant alleges that the claim against Credit Corp fails as a matter of law because Credit Corp does not qualify as a debt collector. (MTD at 13). Defendant relies on the holding in *Henson v. Santander Consumer USA Inc*, 137 S. Ct. 1718, 1722 (2017), to support its argument. In *Henson*, the Supreme Court held that debt buyers who "regularly purchase debts originated by someone else and then seek to collect those debts for their own account" are not debt collectors because they do not regularly seek to collect debts "owed ... another." 137 S. Ct. at 1721-22, *quoting* 15 U.S.C. § 1692a(6). This definition "seems to focus our attention on third party collection agents working for a debt owner— not on a debt owner seeking to collect debts for itself." *Id*. at 1721. However, as Plaintiff points out, the holding in *Henson* addresses the "regularly collects" definition of

---

[5] The Court refers to the first definition as the "principal purpose" prong (those engaged in "any business the principal purpose of which is the collection of any debts"), and refers to the second definition as the "regularly collects" prong (those "who regularly collect[ ] ... debts owed or due another"). 15 U.S.C. § 1692a.

3:20-cv-01295-JAH-RBB

15 U.S.C. § 1692a(6), but expressly declined to consider the "principal purpose" definition.

In *McAdory v. M.N.S. & Associates, LLC*,[6] the Ninth Circuit found that the "principal prong" provides a distinct means of qualifying as a debt collector unconnected to the "regularly collects" prong. Specifically, the Ninth Circuit stated that the "principal purpose" prong "describes the type of business Congress sought to regulate—i.e., one with a principal purpose of debt collection." *McAdory v. M.N.S. & Associates, LLC*, 952 F.3d 1089, 1094 (9th Cir. 2021). "[T]he 'relevant question' in assessing a business's principal purpose is 'whether debt collection is incidental to the business's objectives or whether it is the business's dominant, or principal, objective.' " *Id.* at 1093.

While Defendant does not address whether it is a "debt collector" under the "principal purpose" prong, and only objects under the "regularly collects" prong, Plaintiff's FAC is devoid of any allegations that indicate Defendant primarily engages in debt collection, or debt collection is the "principal purpose" of the business. Merely alleging that Defendant "regularly" collects consumer debt is insufficient. As such, Plaintiff does not allege Defendant's "principal purpose" is debt collection within the meaning of the FDCPA and fails to state a claim under the statute.[7]

### b. Waiver under the FDCPA

Pursuant to 15 U.S.C. section 1692g(b),

> If the consumer notifies the debt collector in writing within the thirty-day period described in subsection (a) that the debt, or any portion thereof, is disputed, or that the consumer requests the name and address of the original creditor, the debt collector shall cease communication of the debt, or any disputed portion thereof, until the debt collector obtains verification of the debt or a copy of such

---

[6] Defendants in *McAdory* are M.N.S. Associates, LLC ("MNS"), and D.N.F. Associates, LLC, ("DNF"). DNF is a debt purchaser that outsourced collection activity to third-party contractor, MNS. *McAdory*, 952 F.3d, 1091. The Court notes that those facts are distinguishable from the instant matter.

[7] Plaintiff's response in opposition relies on numerous cases to illustrate Defendant's status as a debt collector, however, those cases are not substitutes for a well-pleaded complaint.

judgment, or the name and address of the original creditor, is mailed to the consumer by the debt collector. Collection activities and communications that do not otherwise violate this subchapter may continue during the 30-day period referred to in subsection (a) unless the consumer has notified the debt collector in writing that the debt, or any portion of the debt, is disputed or that the consumer requests the name and address of the original creditor. Any collection activities and communication during the 30-day period may not overshadow or be inconsistent with the disclosure of the consumer's right to dispute the debt or request the name and address of the original creditor.

15 U.S.C. § 1692g(b).

Defendant argues that despite notification via the Request for Validation that Plaintiff refused to pay the debt, "she waived her right to request [Defendant] cease communications by including both language disputing the debt and refusing to pay." (MTD at 15). Relying on *Clark v. Capital Credit & Collection Servs., Inc.*, Defendant asserts that Plaintiff's request that Defendant "verify the Debt and provide the debt balance . . . date of default . . . [and] names of all persons or entities that have purchased the debt" amounted to a waiver. *Id.*

In *Clark*, the Ninth Circuit applied the principles of waiver to a claim brought pursuant to 15 U.S.C. § 1692c(c). *Clark v. Capital Credit & Collection Serv., Inc.*, 460 F.3d 1162, 1170 (9th Cir. 2006). Section 1692c(c) provides that:

> If a consumer notifies a debt collector in writing ... that the consumer wishes the debt collector to cease further communication with the consumer, the debt collector shall not communicate further with the consumer with respect to such debt [.]

15 U.S.C. § 1692c(c).

The Ninth Circuit held that "a debtor may waive the rights created by a cease communication directive." *Clark*, 460 F.3d at 1170. The Ninth Circuit further found that "where waivers are permissible, they are often enforced only if the waiver was 'knowing' or 'intelligent,' which means the individual has 'sufficient awareness of the relevant circumstances and likely consequences' of his decision." *Id.* at 1170-71. However, the Court held that it would also apply a heightened standard of voluntariness to such a waiver.

10

1  *Id.* at 1171.  That is, a waiver would only be enforced "where the least sophisticated debtor
2  would understand that he or she was waiving his or her rights[.]"  *Id.*

3      In the instant matter, Defendant avers Plaintiff waived the cease communication
4  directive by disputing her debt, but patently fails to provide any facts to suggest Plaintiff
5  did so in a manner that was knowing or voluntary.  Accordingly, for purposes of this Rule
6  12(b)(6) motion, Defendant's argument that Plaintiff's communication constituted a
7  waiver is unavailing.

8              *c.  The July 2019 Statement*

9      Defendant posits that even if Plaintiff had not waived her cease communication
10  directive, the July 10, 2019, statement is not a collection letter that violates 15 U.S.C.
11  1692c(c), but rather, is a billing statement.  (MTD at 16).   Plaintiff's response spans 32-
12  pages re-alleging the same allegations found in the FAC, objecting to the Court taking
13  judicial notice to Defendant's exhibits and opining on Defendant's status as a debt
14  collector, but does not rebut Defendant's claim as to whether the July letter is a billing
15  statement.  Nonetheless, Defendant's argument is unavailing.  First, of the cases cited by
16  Defendant in support of its position, none "foreclose[d] the possibility that a monthly
17  statement can also be a debt collection letter."  *Evans v. Select Portfolio Servicing, Inc.*,
18  2020 WL 5848619, at *8 (E.D.N.Y. September 30, 2020).  While not explicitly stated, to
19  support its proposition, Defendant cites to numerous cases which state that monthly
20  statements sent in conformance with the Truth In Lending Act ("TILA") do not violate the
21  FDCPA.  (Mot. at 17).  This argument is misplaced.  The TILA only applies to "creditors"
22  which refers to: "a person who both (1) regularly extends … consumer credit … and (2) is
23  the person to whom the debt arising from the consumer credit transaction is initially
24  payable … ."  15 U.S.C. § 1602(g).  Defendant does not fit within that definition and is not
25  subject to TILA because Defendant is not the person to whom the debt was originally
26  payable.  *See Neff v. Capital Acquisitions & Mgmt. Co.*, 352 F.3d 1118 (7th Cir. 2003)
27  ("[T]o meet th[e] definition [of a creditor under the TILA], however, [the defendants] must
28  have either 'issued a credit card' or been the issuer's 'agent.' ").  Lastly, the FDCPA

prohibits *all* communications "[i]f a consumer notifies a debt collector in writing that the consumer refuses to pay a debt or that the consumer wishes the debt collector to cease further communication with the consumer[.]" 15 U.S.C. § 1692c.  The FDCPA does not provide an exception for billing statements.  Accordingly, Defendant's argument that July 10, 2019, statement is a billing statement, and thus not a violation of the FDCPA is unavailing.

### d. The Telephone Calls

Defendant also argues that Plaintiff "insufficiently pleads whether the Telephone Calls violate the FDCPA or the Rosenthal Act." (MTD at 19).  Specifically, Defendant contends the telephone calls Plaintiff argues are a basis for a violation of the FDCPA are only pled under the "Violations of Plaintiff's Right to Privacy By Intrusion Upon Seclusion." *Id.*  Furthermore, to the extent that the FAC sufficiently alleges that the telephone calls violate the FDCPA or the Rosenthal Act, Defendant avers that the telephone calls are not actionable because Plaintiff fails to allege that she answered any of the telephone calls or that Defendant left a message. *Id.*  Defendant also alleges that Plaintiff does not allege how the phone calls were "false, misleading, or harassing. *Id.* at 20.

Even if Plaintiff specifically plead the telephone calls under her Intrusion Upon Seclusion claim, this alone is not a basis to find Plaintiff's complaint deficient.  Plaintiff alleges that "[a]lthough some of the[ telephone] communications fall outside of the FDCPA's one-year statute of limitations, literally dozens of communications from Defendant . . . occurred within the longer two-year statute of limitations under California law."  FAC at ¶ 42.  It is therefore reasonable to infer that Plaintiff is also alleging the telephone communications are a violation of the FDCPA, even though Plaintiff presents the argument only under the California claim. *See Ashcroft v. Iqbal*, 566 U.S. 662, 678 (2009).  Furthermore, the cases cited by Defendant do not establish as a matter of law that the volume of phone calls cannot constitute violations of the FDCPA.  Despite the shortcomings in Defendant's arguments, the Court finds Plaintiff's complaint is deficient.  The FDCPA defines "communication" as "the conveying of information regarding a debt

directly or indirectly to any person through a medium." 15 U.S.C. § 1692a(2).  Aside from the October 16, 2018, phone call with "John Perdomo", it is unclear from the FAC if Plaintiff answered Defendant's telephone calls, whether Defendant left a voicemail, and how she identified Defendant as the caller.[8]   Accordingly, Plaintiff has insufficiently pleaded a violation of the FDCPA as to the telephone calls.

### 2.    Second Claim: Violation of the Rosenthal Act

Defendant contends that Plaintiff fails to claim a violation of the Rosenthal Act for the same reasons her FDCPA claims fail.  "The Rosenthal Act mimics or incorporates by reference the FDCPA's requirements . . . and makes available the FDCPA's remedies for violations. Thus, . . . whether [conduct] violates the Rosenthal Act turns on whether it violates the FDCPA."  *Riggs v. Prober & Raphael*, 681 F.3d 1097, 1100 (9th Cir. 2012) (*citing* Cal. Civ. Code § 1788.17). As such, for the reasons discussed above, the Court adopts its findings contained *infra*, Section II.B.1.b-d.[9]

---

[8] Although discussed by Defendant, Plaintiff's FAC does allege or cite to 15 U.S.C. § 1692d, as such, the Court will not discuss whether Plaintiff sufficiently claims the communications were intended to annoy, abuse, or harass Plaintiff.  15 U.S.C. § 1692d(5) ("A debt collector may not engage in any conduct the natural consequence of which is to harass, oppress, or abuse any person in connection with the collection of a debt. … [T]he following conduct is a violation of this section . . .. Causing a telephone to ring . . . repeatedly or continuously with intent to annoy, abuse, or harass any person at the called number.")

[9] Defendant attempts to rely on *Marcotte v. General Elec. Capital Services, Inc.*, 709 F.Supp.2d 994 (S.D. Cal. 2010), to argue that balance statements do not violate § 1788.17 of the Rosenthal Act.  In *Marcotte*, the plaintiff owed a consumer debt to the defendant. *Marcotte*, 709 F.Supp.2d at 996.  The plaintiff retained a law firm to resolve his debts and file for bankruptcy.  *Id.*   The firm sent a letter to the defendant, notifying defendant that the plaintiff is represented and directing all future communications be sent to the firm.  *Id.* The defendant thereafter sent the plaintiff two billing statements, which the plaintiff asserted was a violation of the Rosenthal Act.  The court in *Marcotte* found, *inter alia*, that the communications at issue were actually billing statements and did not violate § 1788.17. *Id.* at 1002.  However, the *Marcotte* court does not foreclose the possibility that a billing statement can be converted into a demand letter depending on the content therein.  At this

### 3.   Third Claim: Intrusion Upon Seclusion

Finally, Defendant argues that Plaintiff's complaint fails as a matter of law because she only makes vague claims that the "calls interrupted her daily activities . . . Plaintiff, however, does not allege that any of these calls were made during odd hours or were made by unknown numbers by callers that failed to identify themselves."  (MTD at 22).  As previously mentioned, Plaintiff does not rebut Defendant's argument as to the viability of her intrusion upon seclusion claim.

"Under California law, the essential elements of an intrusion upon seclusion claim are as follows: '(1) [t]he defendant intentionally intruded, physically or otherwise, upon the solitude or seclusion, private affairs or concerns of the plaintiff; (2) [t]he intrusion was substantial, and of a kind that would be highly offensive to an ordinarily reasonable person; and (3) [t]he intrusion caused plaintiff to sustain injury, damage, loss or harm.' "  *Romero v. Dep't Stores Nat'l Bank*, No.: 15-CV-193-CAB-MDD, 2016 WL 11621402, at *3 (S.D. Cal. February 4, 2016) (*citing Rowland v. JPMorgan Chase Bank, N.A.*, No. C 14-00036 LB, 2014 WL 992005 (N.D. Cal. Mar. 12, 2014)).

Plaintiff's FAC alleges that she received at least twenty-four debt collection calls from Defendant between September 5, 2018, and June 10, 2019, after her cease communication directive.  FAC at ¶ 51.  Plaintiff alleges that nineteen of the twenty-four phone calls occurred after the cease communication directive and "her telephone conversation with Defendant instructing Defendant to stop calling." *Id.* at ¶ 51. Plaintiff's complaint states that each of these phone calls "interrupted Plaintiff's daily activities[,] including preparing and eating meals, reading, watching television, browsing the internet,

---

juncture, Plaintiff has alleged sufficient facts to suggest that the July 2019 statement contains debt collection language.  *Cf Marcotte*, 709 F.Supp.2d at 1002 ("The billing statements at issue here contain all of th[e] information [as required by Cal. Civ. Code § 1810.3] and nothing else that would change the billing statements into demand letters or efforts at debt collection. The statements do not state that any amounts are past due, and there is no indication that the documents are aimed at debt collection.").

cleaning, resting, and having conversations . . . distracting her from her activities, and depriv[ing] her of the use of her home telephone." *Id.* at 9-10, ¶¶ 55-56. However, these allegations alone, even when construed in the light most favorable to Plaintiff, do not sufficiently allege a claim for intrusion upon seclusion.

Contrary to Defendant's assertion, this Court and other district courts within the Ninth Circuit have held that "repeated and continuous calls in an attempt to collect a debt give rise to a claim for intrusion upon seclusion" under California law. *See e.g., Dolesnki v. GE Money Bank, F.S.B.*, No. 3:11–cv–1594–JAH (BGS), 2012 WL 12054940 (S.D. Cal. March 28, 2012). However, the number of calls and the duration of those calls are highly relevant to the Court's analysis. In *Dolesnki*, for example, this Court found that a plaintiff who received 144 calls in a span of twenty-two days, and 256 calls over a span of twenty-eight days sufficiently alleged a claim of intrusion upon seclusion. *Id.* at *5. Nonetheless, Plaintiff does little more than allege that the volume of calls was disruptive. Furthermore, Plaintiff does not provide sufficient facts "to allege the content of any of the calls placed to [p]laintiff . . . and what was highly offensive about such calls." *Castellanos v. JPMorgan Chase & Co.*, No. 09–CV–00969–H (JMA), 2009 WL 1833981 (S.D. Cal. June 23, 2009); *see also Marseglia v. JPMorgan Chase & Co.*, No. 09cv2857 JAH(RBB) (same). Therefore, this Court finds Plaintiff failed to plead facts sufficient to state a claim for intrusion upon seclusion. Accordingly, Defendant's motion to dismiss as to this claim is granted.

///

///

///

///

///

3:20-cv-01295-JAH-RBB

**C.      Plaintiff's Request for Sanctions**[10]

Plaintiff also moves for sanctions under the Court's inherent authority.  (*See* Sanctions Mot.).  Plaintiff contends that Defendant's violations of Federal Rules of Civil Procedure 5.2 on two separate occasions "sufficiently disrupted this litigation to warrant the imposition of sanctions."  (*Id.* at 13-14). "Because inherent powers are shielded from direct democratic controls, they must be exercised with restraint and discretion." *Roadway Express, Inc. v. Piper*, 447 U.S. 752, 764(1980).  On the record before the Court, there is no basis to conclude that Defendant's conduct meets the high bar to warrant sanctions. *See Primus Automotive Financial Services, Inc. v. Batarse*, 115 F.3d 644, 649 (9th Cir. 1997) ("The bad faith requirement sets a high threshold[.]").  Exercising its discretion, the Court denies Plaintiff's motion for sanctions.

**D.      Leave to Amend**

"[A]lthough Rule 12(c) does not mention leave to amend, courts have discretion both to grant a Rule 12(c) motion with leave to amend and to simply grant dismissal of the action instead of entry of judgment."  *Lonberg v. City of Riverside*, 300 F. Supp. 2d 942, 945 (C.D. Cal. 2004).

Plaintiff requested leave to amend if the Motion was granted.  (Opp'n. 31-32). On the present record, there is no basis to conclude that "the pleading could not possibly be cured by the allegation of other facts." *Henry A. v. Willden*, 678 F.3d 991, 1005 (9th Cir. 2012).  For this reason, Plaintiff is granted leave to amend.

---

[10] Plaintiff's motion stresses the importance of abiding by the Federal Rules of Civil Procedure.  While the Court agrees, it also notes that Plaintiff's Response in Opposition to Defendant's Motion to Dismiss does not fully comport with the Local Rules.  Civ.L.R. 5.1(a) ("Printed text, produced on a word processor or other computer, may be proportionally spaced allowing 28 lines on one side of the document, provided the type is no smaller than 14-point standard font (*e.g.* Times New Roman).")  The Court reminds both the Parties to familiarize themselves with the Federal Rules of Civil Procedure and the Civil Local Rules and adhere to these rules in future filings.

### III.

### CONCLUSION

Accordingly, IT IS HEREBY ORDERED:

1.      Defendant's Request for Judicial Notice is **denied**;

2.      Plaintiff's Request for Judicial Notice is **granted;**

3.      Defendant's Motion to Dismiss is **granted in part and denied in part**, with leave for Plaintiff to amend.  Plaintiff shall file a Second Amended Complaint within twenty-one (21) days from the date of this Order.  A failure to do so will result in the dismissal of this action with prejudice; and

4.      Plaintiff's Motion for Sanctions is **denied**.

**IT IS SO ORDERED.**

DATED: March 30, 2022

_____

JOHN A. HOUSTON
UNITED STATES DISTRICT JUDGE